UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| _____ | ) | |
| REV. DR. THOMAS A. SUMMERS, | ) | |
| REV. DR. ROBERT M. KNIGHT, | ) | |
| RABBI SANFORD T. MARCUS, REV. | ) | |
| DR. NEAL JONES, HINDU | ) | |
| AMERICAN FOUNDATION, and | ) | |
| AMERICAN-ARAB | ) | |
| ANTI-DISCRIMINATION COMMITTEE | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Case No. 3:08-2265-CMC |
| MARCIA S. ADAMS, in her | ) | |
| official capacity as the Director of the | ) | |
| South Carolina Department of Motor | ) | |
| Vehicles; JON OZMINT, in his official | ) | |
| capacity as the Director of the Department | ) | |
| of Corrections of South Carolina. | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

## FIRST AMENDED COMPLAINT

### Introduction

1.      The South Carolina General Assembly has unanimously approved, and the Governor

has allowed to take effect, legislation ordering the production of an explicitly Christian-themed

specialty license plate. *See* Act No. 253 (June 5, 2008) (to be codified at S.C. CODE ANN. § 56-3-

10110 (2008)).  The speciality plate features the words "I Believe" accompanied by a depiction of

a large, bright-yellow cross superimposed upon a multicolored, stained-glass window.

2.      The special preference shown for Christianity via the General Assembly's approval

of the "I Believe" license plate not only improperly advances and endorses religion, but also

discriminates against citizens of other faiths because it fails to provide a comparable expressive

outlet.  While individuals and religious organizations of minority beliefs wishing to express their

spiritual views on their license plates may apply to the DMV for approval of organizational or personalized vanity plates, the expressive speech permitted under the DMV-approval scheme is significantly more restricted than the scheme that the legislature created through the "I Believe" Act. Organizational plates may display only the name of the sponsoring organization and the organization's official logo; no other emblems, symbols, or iconography are permitted; and expressive words and/or phrases, such as "I Believe," are prohibited. *See infra* ¶ 23. Personalized vanity plates may contain only seven characters (including spaces), limited to numbers, letters, and ampersands; symbols or emblems are not permitted; and the proposed personalized message may not already be in use on another driver's plate. *See infra* ¶ 18. Other differences between the DMV-approval process and the legislature-approval process — such as the cost structure and state officials' efforts to skirt certain requirements related to plate production — further advantage the "I Believe" plate over other specialty license plates. *See infra* ¶¶ 17-44. Indeed, state officials have already acknowledged that the law provides no comparable means of expression for non-Christian faiths, and have expressed their resolve not to permit similar plates for other minority religions, including Buddhism, Islam, and Wicca. *See infra* ¶¶ 36, 43.

3.    But even if a comparable route were available to private individuals or organizations, that would not change the fact that the "I Believe" plate has the imprimatur of the State itself; it is the State, not a private entity, that stands behind it. The South Carolina legislature's decision to align itself with a single religion — Christianity — runs afoul of the Establishment Clause of the First Amendment to the United States Constitution, and the preferential treatment that the State has accorded to the Christian viewpoint violates the Free Speech Clause of the First Amendment to the United States Constitution.

4.      Eager for the state to begin production of the Christian-themed plate, and in an effort to skirt a state law requiring that the DMV receive either a $4,000 deposit (typically from a sponsoring organization) or 400 prepaid orders before beginning production of any newly authorized license plate, Lieutenant Governor Andre Bauer has announced that he would be willing to advance $4,000 of his own money, to be ultimately reimbursed by the state, so that the plate can be produced without delay.

5.      The approval of the "I Believe" license plate is one among several recent efforts by South Carolina legislators to promote religion. In May 2008, the state enacted the "South Carolina Public Invocation Act," authorizing deliberative public bodies to open their meetings with sectarian prayers — in defiance of U.S. Supreme Court case law to the contrary. *Compare* Act No. 241 (May 27, 2008) (to be codified at S.C. CODE ANN. § 10-1-168 (2008)) *with Marsh v. Chambers*, 463 U.S. 783, 793 n.14, 794-95 (1983) (noting that prayer-giver opening legislative meetings had "removed all references to Christ," and emphasizing that "there was no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief"), *and County of Allegheny v. ACLU*, 492 U.S. 573, 603 (1989) ("[N]ot even the unique history of legislative prayer can justify contemporary legislative prayers that have the effect of affiliating the government with any one specific faith or belief."). The State also has enacted legislation permitting governmental bodies to erect the Lord's Prayer as part of displays depicting the "foundations of American law and government." Act of June 11, 2008 (to be codified at S.C. CODE ANN. § 10-1-168 (2008)). Last year, the State approved legislation authorizing public schools to teach courses in the Old and New Testaments. S.C. CODE ANN. § 59-29-230 (2007). And in 2006, the State enacted a measure permitting public schools to award elective credit for religious classes conducted off-

campus by religious organizations during the school day. *Id*. § 59-39-112 (2006). A number of other measures introduced during the most recent legislative session would have, if approved, further advanced state officials' religious agenda: Proposed Senate Bill 1386 would have authorized public schools to teach anti-evolution principles (*see* S.B. 1386, 2007-08 Leg., 117th Sess. (S.C. 2008)); proposed Senate Bill 1394 would have required public schools to permit students to proselytize other students during class and at other school-related events (*see* S.B. 1394, 2007-08 Leg., 117th Sess. (S.C. 2008)); proposed House Bill 4090 would have exempted vacation Bible schools from certain child-care regulations (*see* H.B. 4090, 2007-08 Leg. (S.C. 2007)); and proposed House Bill 3229 would have authorized the Citadel to "have prayer at on-campus and off-campus events sponsored by the university" — in direct contravention of the Fourth Circuit's ruling in *Mellen v. Bunting*, 327 F.3d 355 (4th Cir. 2003) (*compare id*. at 376 *with* H.B. 3229, 2007-08 Leg. (S.C. 2007)). Furthermore, in past years, the state House and Senate have adopted resolutions to encourage prayers at public universities and colleges (*see* H.R. 5056, Leg. 2005-06, 116th Sess. (S.C. 2006)), urging citizens to take part in the National Day of Prayer (*see* H.R. Con. Res. 4042, Leg. 2003-04, 115th Sess. (S.C. 2003)), and condemning the U.S. Supreme Court for its decision in *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000) (*see* S.R. 1438, Leg. 1999-2000, 113th Sess. (S.C. 2000); H.R. 5176, Leg. 1999-2000, 113th Sess. (S.C. 2000)).

## Jurisdiction and Venue

6.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.      This Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

**Parties**

9.      Plaintiff Reverend Dr. Thomas A. Summers is a retired minister with the United Methodist Church. He was raised in Orangeburg, South Carolina, and has resided in Columbia, South Carolina, with his wife for more than 40 years. Before retiring, Dr. Summers served for nearly 35 years as a full-time chaplain at the South Carolina Department of Mental Health. During that period, he worked for 17 years as chief chaplain at the Department's William S. Hall Psychiatric Institute, and he served as director of the Department's Academy for Pastoral Education for 16 years. He also has acted as a guest minister at many churches across South Carolina. Dr. Summers has received the Mental Health Association of South Carolina's Distinguished Service Award for his work as a pastoral counselor and chaplain, and he has been an active member of the Association for Clinical Pastoral Education, which honored him with its Pioneer Award. Throughout his religious career, Dr. Summers has worked to promote the ideals of diversity and interfaith harmony at the state, national, and international levels. In that vein, he serves on the North America Board of Directors for the International Pastoral Care Network for Social Responsibility, which aims to foster spiritual, emotional, and environmental health for all persons, institutions, and the planet. He also has worked with Witness for Peace, a nationwide grassroots organization committed to nonviolence and led by faith and conscience, serving as a member of peace delegations dispatched to several South American countries. As a South Carolina citizen, a driver licensed with the South Carolina DMV, and the owner, with his wife, of an automobile registered with the DMV, Dr. Summers expects that he will view (1) images of the "I Believe" license plate when, for any variety of purposes, he visits the DMV's website, which promotes new license plates and makes them

available for online ordering; and (2) the "I Believe" plate itself when it is displayed on automobiles throughout the state. Dr. Summers objects to, and is offended by, the legislature's approval of the "I Believe" plate, the imminent production and issuance of the plate, and the plate's imminent display on the DMV website and automobiles because — by improperly placing a governmental imprimatur on the Christian beliefs expressed by the plate — these activities co-opt the religious iconography and beliefs of his faith for the benefit of the state, thereby demeaning these sacred images and beliefs. Dr. Summers also objects to, and is offended by, these activities because they discriminate against Christians and non-Christians who may wish to convey a different religious message via their license plates by affording preferential treatment to a particular Christian viewpoint, while failing to allow in the same forum the expression of other Christian and non-Christian viewpoints. Dr. Summers is particularly concerned that the State's discrimination toward non-Christian believers amounts to theological bullying of members of South Carolina's minority religious groups, and thus creates the very type of religious discord that he has devoted his life to healing.

10.    Plaintiff Reverend Dr. Robert M. Knight has been the pastor at First Christian Church (Disciples of Christ) in Charleston, South Carolina, for 14 years. He has worked as a pastoral counselor since 1975. Dr. Knight also serves as an adjunct professor of clinical counseling at Webster University and writes a periodic column in the Sunday "Faith and Values" section of *The Post and Courier*. Freedom of belief is a principal tenet of Dr. Knight's faith: the church affirms that Jesus Christ is the son of the Living God and that all persons are God's children, but welcomes all believers within that viewpoint, imposing no limitations on how they practice that belief. Church members are free to follow their consciences guided by the Bible, the Holy Spirit, study, and prayer,

and are expected to extend that freedom to others. Thus, the "open table" is a powerful symbol within Dr. Knight's faith because it honors diversity in religious belief and practice even as it celebrates unity in Christ. As a South Carolina citizen, a driver licensed with the South Carolina DMV, and the owner of an automobile registered with the DMV, Dr. Knight expects that he will view (1) images of the "I Believe" license plate when, for any variety of purposes, he visits the DMV's website, which promotes new license plates and makes them available for online ordering; and (2) the "I Believe" plate itself when it is displayed on automobiles throughout the state. Dr. Knight objects to, and is offended by, the legislature's approval of the "I Believe" plate, the imminent production and issuance of the plate, and the plate's imminent display on the DMV website and automobiles because — by improperly placing a governmental imprimatur on the Christian beliefs expressed by the plate — these activities co-opt the religious iconography and beliefs of his faith for the benefit of the state, thereby demeaning these sacred images and beliefs. Dr. Knight also objects to, and is offended by, these activities because they discriminate against Christians who may wish to convey a different religious message via their license plates, by affording preferential treatment to a particular Christian viewpoint, while failing to allow in the same forum the expression of other Christian viewpoints.

11.     Plaintiff Sanford T. Marcus is Rabbi Emeritus at the Tree of Life Congregation in Columbia, South Carolina. He served as Rabbi at the Tree of Life for 20 years, and continues to serve as a guest rabbi for congregations across the state. Rabbi Marcus has been, and remains, actively involved in the local and statewide community: He serves with several local Jewish organizations; and he is an adjunct professor of Jewish History at the University of South Carolina. Rabbi Marcus also has served on the South Carolina Council of the Holocaust, the Board of

Directors for the Palmetto Project, Columbia's Jewish Community Relations Committee, and the Governor's Youth Council.  Rabbi Marcus has devoted his life to fostering respect and unity in the interfaith community.  He is a member of the steering committee of Partners in Dialogue, an interfaith community-service project that brings together the Hindu, Buddhist, Jewish, Christian, Muslim, Unitarian Universalist, Bahá'í, Sikh, and Native American communities to learn how to talk and work together as a force of civility around issues that often cause strife and division.  And he has been formally recognized by the South Carolina General Assembly for his work with the statewide Catholic community to renew the Catholic-Jewish Dialogue.  *See* S.R. Con. Res. 1266, 2006-07 Leg., 116th Sess. (2006) (concurrent resolution honoring and recognizing Rabbi Marcus "for his outstanding spiritual leadership and many contributions to his devoted [congregation] members, to the interfaith community, and to the State of South Carolina").  As a South Carolina citizen, a driver licensed with the South Carolina DMV, and the owner of an automobile registered with the DMV, Rabbi Marcus expects that he will view (1) images of the "I Believe" license plate when, for any variety of purposes, he visits the DMV's website, which promotes new license plates and makes them available for online ordering; and (2) the "I Believe" plate itself when it is displayed on automobiles throughout the state.  Rabbi Marcus objects to, and is offended by, the legislature's approval of the "I Believe" plate, the imminent production and issuance of the plate, and the plate's imminent display on the DMV website and automobiles because these activities advance a religious viewpoint to which he does not subscribe; are designed to create the very type of religious discord that he has devoted his life as a rabbi to healing; improperly place the state's imprimatur on the Christian beliefs expressed by the plate, sending the message to Rabbi Marcus and believers of other non-Christian faiths that they are second-class citizens; and discriminate against Jewish believers

(and those of other non-Christian faiths) by affording preferential treatment to an expressly Christian viewpoint, while failing to allow in the same forum the expression of an explicitly Jewish viewpoint.

12.     Plaintiff Reverend Dr. Neal Jones has served as a reverend at the Unitarian Universalist Fellowship of Columbia for three years.  The principal tenets of his faith include: justice, equity, and compassion in human relations; acceptance of one another and encouragement of spiritual growth in congregations; a free and responsible search for truth and meaning; the right of conscience and the use of the democratic process within congregations and in society at large; the goal of world community with peace, liberty, and justice for all; and respect for the interdependent web of all existence of which every person is a part.  Rev. Dr. Jones's beliefs do not encompass traditional Christian viewpoints, and do not include the belief that Jesus Christ was the son of God. As a South Carolina citizen, a driver licensed with the South Carolina DMV, and the owner of an automobile registered with the DMV, Rev. Dr. Jones expects that he will view (1) images of the "I Believe" license plate when, for any variety of purposes, he visits the DMV's website, which promotes new license plates and makes them available for online ordering; and (2) the "I Believe" plate itself when it is displayed on automobiles throughout the state.  Rev. Dr. Jones objects to, and is offended by, the legislature's approval of the "I Believe" plate, the imminent production and issuance of the plate, and the plate's imminent display on the DMV website and automobiles because these activities advance a religious viewpoint to which he does not subscribe; create the very type of religious discord that Unitarian Universalism aims to prevent; improperly place the state's imprimatur on the Christian beliefs expressed by the plate, sending the message to himself and believers of other non-Christian faiths that they are second-class citizens; and discriminate against Unitarian Universalist believers (and those of other non-Christian faiths) by affording

preferential treatment to an expressly Christian viewpoint, while failing to allow in the same forum the expression of an explicitly Unitarian Universalist viewpoint.

13.     Plaintiff Hindu American Foundation is a national, non-profit, human-rights advocacy organization whose purpose is to provide a voice for over two million Hindu-Americans, including members who reside in South Carolina.  Hinduism, the world's third largest religion, is a rich collection of hundreds of spiritual and philosophical traditions that has been followed primarily throughout Southeast Asia and the global Hindu diaspora for more than 5,000 years.  Most traditions within Hinduism share certain distinctive, core beliefs despite the absence of an identifiable beginning in history, a single founder, a central religious establishment, or a sole authoritative scripture.  These core tenets include belief in (1) the existence of the Divine; (2) the ability to worship the Divine in multiple forms; and (3) truth, non-violence, and balanced living.  Moreover, while tolerance and pluralism are valued by many religions, these concepts are the very essence of Hinduism and are expressed through the diversity of Hindu practice and centuries of peaceful coexistence with other religious traditions and faiths.  The Foundation aims to promote these ideals by interacting with and educating leaders in public policy, academia, government, and media, as well as the public at large, about Hinduism and issues of concern to Hindus globally and locally, such as the free exercise of religion, the portrayal of Hinduism, hate speech, hate crimes, discrimination, and human rights.  Foundation members who are drivers licensed with the South Carolina DMV and/or own automobiles registered with the DMV expect that they will view (1) images of the "I Believe" license plate when, for any variety of purposes, they visit the DMV's website, which promotes new license plates and makes them available for online ordering; and (2) the "I Believe" plate itself when it is displayed on automobiles throughout the state.  These

10

members, as well as the Foundation, object to, and are offended by, the State's approval and offering of the "I Believe" plate, the imminent production and issuance of the plate, and the plate's imminent display on the DMV website and automobiles because these activities advance a religious viewpoint to which the Foundation and its members do not subscribe; create religious discord and thereby undermine the Foundation's efforts to promote understanding, tolerance, and pluralism; improperly place the state's imprimatur on the Christian beliefs expressed by the plate, sending the message to the Foundation and its members that they, and all other Hindus and believers of other non-Christian faiths, are second-class citizens; and discriminate against Hindu believers (and those of other non-Christian faiths) by affording preferential treatment to an expressly Christian viewpoint, while failing to allow in the same forum the expression of an explicitly Hindu viewpoint.

14.     Plaintiff American-Arab Anti-Discrimination Committee is a civil-rights organization committed to defending the rights of people of Arab descent and promoting their rich cultural heritage. ADC is the largest Arab-American grassroots civil rights organization in the United States. Founded in 1980 by former United States Senator James Abourezk, ADC has nearly 40 chapters nationwide, and members in all 50 states. Though ADC is non-sectarian and non-partisan — and, as such, has members with a variety of religious backgrounds, including Muslims, Jews, Christians, Sikhs, Hindus, Buddhists, and Arabs of other faiths — ADC has a particular interest in combating anti-Muslim religious bias because discrimination against Arab-Americans is often based in anti-Muslim sentiment, like that expressed by state Rep. Bill Sandifer's refusal to consider approving a license-plate promoting Muslim beliefs. *See infra* ¶ 43. Thus, ADC's myriad educational and legal initiatives have placed it at the forefront of national efforts to combat discrimination against Arab-Americans, including discrimination based in religious prejudice and

bias.  Specifically, consistently with its educational mission, ADC (aided by its Research Institute)

issues reports and conducts research studies, seminars, and conferences to identify, document, and

raise awareness of discrimination faced by Arab-Americans in the workplace, schools, media, and

governmental agencies and institutions.  Further, consistently with its mission to eradicate all forms

of unlawful discrimination against Arab-Americans, and to preserve their constitutional rights,

ADC's Legal Department offers counseling and assistance in cases of discrimination and

defamation.  Since September 11, 2001, ADC's activities in support of the Arab-American

community have become especially crucial because Arab-Americans continue to be subjected to

increasing discrimination.  ADC members who are drivers licensed with the South Carolina DMV

and/or own automobiles registered with the DMV expect that they will view (1) images of the "I

Believe" license plate when, for any variety of purposes, they visit the DMV's website, which

promotes new license plates and makes them available for online ordering; and (2) the "I Believe"

plate itself when it is displayed on automobiles throughout the state.  These members, as well as

ADC itself, object to, and are offended by, the State's approval and offering of the "I Believe" plate,

the production and issuance of the plate, and the plate's imminent display on the DMV website and

automobiles because these activities advance a religious viewpoint to which ADC and its

non-Christian members do not subscribe; improperly place the State's imprimatur on the Christian

beliefs expressed by the plate, sending the message to ADC and its non-Christian members that they

are second-class citizens; and discriminate against the ADC's non-Christian members by affording

preferential treatment to an expressly Christian viewpoint, while failing to allow in the same forum

the expression of any minority-faith viewpoint.  In doing so, the State fosters religious discord and

inflames further bias and prejudice against believers of minority faiths, including Muslims, Jews,

12

Hindus, Sikhs, and Buddhists, thereby undermining the ADC's efforts to promote a pluralistic nation free from discrimination against Arab-Americans of all religions.

15.     Defendant Marcia S. Adams is the Director of the South Carolina Department of Motor Vehicles.  In that capacity, she is responsible for administering section 56-3-10110 of the South Carolina Code and issuing the "I Believe" license plate.  Defendant Adams is sued in her official capacity for actions taken under color of state law.

16.     Defendant Jon Ozmint is the Director of the Department of Corrections of South Carolina.  In that capacity, he is responsible for overseeing the production of the "I Believe" license plate.  Defendant Ozmint is sued in his official capacity for actions taken under color of state law.

**General Allegations**

**A.     Overview of South Carolina's License Plate Scheme**

17.     South Carolina issues over 350 different license plates.  The standard motor-vehicle license plate is issued under section 56-3-1210 of the South Carolina Code and costs $24.  The current standard plate depicts a green palmetto — South Carolina's state tree — on a blue and white background, accompanied by the words "Smiling Faces. Beautiful Places."  The DMV's website advertises that, beginning in July 2008, this plate is being replaced by a "Sunrise License Plate," which features a dark-blue palmetto and crescent moon silhouetted against a sunrise and the words "TRAVEL2SC.COM."  *See* SC New Sunrise License Plates: The New Sunrise Plates are Coming!, *at* http://scdmvonline.com/DMVNew/default.aspx?n=SC_New_Sunrise_License_Plates (last visited July 29, 2008).

18.     For an additional fee of $30, individuals may request a vanity plate, with a customized alphanumeric code, under section 56-3-2010 of the South Carolina Code.  Personalized

vanity plates may contain only seven characters (including spaces), limited to numbers, letters, and ampersands. *See* South Carolina Department of Motor Vehicles Policy MG-96 (revised Nov. 2007). Symbols or emblems are not permitted, and the proposed personalized message may not already be in use on another driver's plate. *See* S.C. CODE ANN. § 56-3-2010(A) (1976).

19.     Other specialty plates are created through one of two processes: the DMV-approval process or the legislature-approval process.

20.     The DMV-approval process allows nonprofit organizations to seek specialty license plates bearing the name and an "emblem, a seal, or other symbol" of the organization. *Id*. § 56-3-8000(A) (2006). An organization (or an individual representing an organization) initiates the process by applying to the DMV. Before the Department produces and distributes such a plate, it must receive: (1) 400 prepaid applications for the specialty plate or $4,000 from the organization seeking issuance of the plate; (2) a DMV-approved marketing plan; and (3) the "emblem, seal, or other symbol" of the organization to be imprinted on the plate. *Id*. § 56-3-8000(A)-(B).

21.     In the DMV-approval process, the sponsoring organization specifies the fee, beyond the usual $24 fee, to be paid by individuals who wish to display the plate on their cars. For the vast majority of plates, the specified fee falls between $30 and $70. Costs for producing the plate are taken off the top of this fee, and the balance is distributed to the sponsoring organization or to another group or cause that the sponsoring organization has designated. *Id*. § 56-3-8000(A).

22.     Organizations such as the South Carolina Chiropractic Association, the Secular Humanists of the Low Country, the National Multiple Sclerosis Society, the Surfrider Foundation, and the Ancient Free Masons have obtained specialty plates via this DMV process.

14

23.     The type of expression permitted on DMV-approved specialty plates has been recently circumscribed:  plates "may include only an emblem, a seal, logo, or other symbol representative of the sponsoring organization that the Department deems appropriate," and "may not include slogans, names or other text, except if such text appears within the sponsoring organization's emblem, seal, logo, or other representative symbol."  South Carolina Department of Motor Vehicles Policy RG-504 at 7 (enacted June 7, 2007).

24.     In the legislature-approval process, no similar limitation exists; legislatively approved plates, like the "I Believe" plate, may include symbols and emblems as well as text.

25.     Typically, the General Assembly enacts legislation creating a specialty license plate at the request of a particular organization.  *See, e.g.*, S.C. CODE. ANN. §§ 56-3-3410 (Wild Turkey Federation); -3500 (Penn Center); -4100 (South Carolina Elks Association); -5410 (Fraternal Order of Police); -8200 (Rotary Club).

26.     After the General Assembly approves a specialty plate and the governor signs the bill into law (or allows it to become law without his signature), the DMV is authorized to produce and distribute the plate once it receives: (1) 400 prepaid applications for the special license plate or $4,000 from the organization seeking issuance of the plate; (2) a DMV-approved marketing plan; and (3) the "emblem, seal or other symbol" to be used for the plate.  *Id*. § 56-3-8100(A) (2006).

27.     On some occasions, the General Assembly has, on its own, initiated legislation to create a particular plate.  Legislature-initiated license plates include, for example, "Public Education: A Great Investment" and "Protect Endangered Species."  The legislature has also used this route to approve specialty license plates marked "God Bless America" and "In God We Trust."  *Id*. §§ 56-3-9200, -9500.

28.     With legislatively created plates for which a private organization has lobbied, the legislature normally specifies a fee, beyond the usual $24 fee, to be paid by individuals who wish to display the specialty plate on their cars. *Id*. § 56-3-8100(B). The cost of producing the plate is taken off the top of the specified fee, and the balance is typically distributed to the requesting organization. *Id*. § 56-3-8100(C).

29.     When the General Assembly initiates the plate on its own, the legislation usually specifies an additional fee and designates the excess funds to be directed to a private or governmental entity supporting a cause related to the subject of the license plate. *Id*. § 56-3-8100(C). For example, the legislation authorizing the public-education plate mandates that $20 of the $54 fee will be placed in a "Public Education: A Great Investment Fund" and that $34 will be distributed to a "school designated for the purchase of computers for use in the classrooms." *Id.* § 56-3-5010. Similarly, the "Nongame Wildlife and Natural Areas Fund" is designated as the recipient of excess funds collected from sales of the legislature-initiated endangered-species plate. *Id*. § 56-3-4510. The excess funds collected from sales of the "God Bless America" plate, which costs an additional $16 beyond the regular plate fee, are directed to the South Carolina National Guard. *Id*. § 56-3-9500.

30.     In some instances, the additional fee set forth in the authorizing legislation does not benefit any particular organization or cause. For example, the $50 fee paid by users of the "Shag" specialty plate, which commemorates the fiftieth anniversary of the state dance (*id*. § 56-3-3910), and the $50 fee paid by users of the "Square Dance" specialty plate (*id*. § 56-3-7610), does not appear to be directed toward any particular beneficiary. Similarly, though the legislative acts authorizing specialty plates for veterans of the Korean and Vietnam Wars (*id*. §§ 56-3-7360, -7780),

16

Normandy Survivors (*id.* § 56-3-5350), and County Veterans' Affairs Officers (*id.* § 56-3-7000) all impose additional fees ranging from $20 to $30, funds that exceed the plates' production costs do not benefit any related cause or organization.

31.    With respect to some legislatively approved plates, such as the "In God We Trust" plate, the legislature specifies that drivers can obtain the plate without paying any additional fee at all — they need pay only the usual $24 that must be paid to obtain a plate of the standard-issue variety. *Id.* § 56-3-9200.

**B.    The "I Believe" License-Plate Scheme**

32.    On April 24, 2008, South Carolina Senators McGill and Grooms introduced S. 1329, a bill to create a specialty license plate featuring a large, bright-yellow cross superimposed against a multicolored, stained-glass window, joined by the words "I Believe" in yellow at the bottom of the plate.

33.    Upon information and belief, no private organization initiated the plate; the impetus for the plate came from within the legislature and Lieutenant Governor Bauer's office.

34.    The cross is an easily recognizable symbol of Christianity.

35.    The South Carolina House and Senate each unanimously approved the bill to create the specialty plate. The bill does not set a fee, beyond the usual $24, to be paid by drivers who wish to display the plate on their cars; nor does it designate an organization or public agency to receive any funds from the plate's issuance. *See* S. 1329, 117th Leg. (S.C. 2008).

36.    On June 5, 2008, South Carolina Governor Mark Sanford allowed the bill to become law without his signature. In a letter to the legislature, he stated that his "concerns are not with the substantive content of the 'I Believe' license plate, but instead with an unnecessarily complicated

process that involves the General Assembly passing legislation" when a specialty plate could be approved by the DMV at the request of an organization.

37.     In his letter to the General Assembly, Governor Sanford ordered that, because the legislature did not designate an excess fee for the plate, or an organization to receive funds collected through the sale of the plate, as contemplated by section 56-3-8100(B) and (C) of the South Carolina Code, the DMV is to determine the amount necessary to produce the "I Believe" plates and set that amount as the cost of the plate.  That cost has been publicly estimated at $4-$6.  Sean D. Hamill, *South Carolina to Offer Cross on Car Plates*, N.Y. TIMES, June 6, 2008, at A14.

38.     Thus, users of the "I Believe" plate will, upon information and belief, pay significantly less money to display the plate on their vehicles than virtually all other specialty and vanity license-plate users.

39.     In addition, because the "I Believe" plate was initiated by the legislature, rather than by a private organization, state officials are, upon information and belief, responsible for preparing and submitting to the DMV a marketing plan for the plate's sale.

40.     Lieutenant Governor Andre Bauer, eager to see the "I Believe" plates produced as soon as possible, announced soon after the plate's approval that he was willing to put up the $4,000 required (as an alternative to 400 prepaid orders) to begin production of the plates.  Bauer said he expects that the state will later reimburse him once enough plates have been sold.  *See, e.g.*, Seanna Adcox, *SC First to Get 'I Believe' License Plates*, WASH. POST, June 12, 2008; *Bauer Says He'd Put Up Money for Tags*, THE CHARLESTON POST & COURIER, June 13, 2008.

41.     Bauer has since made clear state officials' religious purpose in approving the plate, declaring:  "We're not going to back down.  We're going to fight for a change.  I'm tired of seeing

Christians back down in fear of a lawsuit." *South Carolina plans license plate for Christians*, CNN, July 7, 2008, *available at http://m.cnn.com/cnn/lt_ne/lt_ne/detail/136753/full.*

42.    DMV officials already have prepared the initial design concepts for the "I Believe" plate and have submitted the designs to the DMV's license-plate vendor.  Alice Massimi, *Lawsuit Filed Over Christian Licence Plate*, WSAV NEWS 3, July 7, 2008, *available at* http://www.wsav.com/midatlantic/sav/search.apx.-content-articles-SAV-2008-07-07-0035.html. The license-plate vendor planned to return artwork to the DMV in July, and the DMV plans to reveal the final plate design and start taking orders for the plate by late August.  *Id.*; Seanna Adcox, *Group files suit over 'I Believe' plates in SC*, ASSOCIATED PRESS, June 19, 2008, *available at* http://www.wtop.com/?nid=104&sid=1392588.  The DMV anticipates that the "I Believe" license plate will be available as early as August 2008.  Massimi, *supra*.

43.    The General Assembly has neither considered nor approved legislation authorizing a specialty plate with the words "I Believe" and iconography associated with a non-Christian faith. Indeed, state officials have made clear that efforts by certain minority faiths to secure legislative approval of license plates bearing their religious symbols and the words "I Believe" would fail. State Rep. Bill Sandifer stated that he  "[a]bsolutely and positively" would not support legislation sponsoring another religion, such as Islam, on specialty plates, explaining, "I would not because of my personal belief, and because I believe that wouldn't be the wish of the majority of the constituency in this house district."  Andrew Moore, *Group Fighting Against Christian License Plate*, UPSTATE TODAY, June 24, 2008, *available at http://www.upstatetoday.com/news/2008/jun/24/group-fighting-against-christian- license-plates/.* And while State Sen. Yancey McGill, who co-sponsored the "I Believe Bill," said that he welcomes

19

any "religion tags," he left no doubt that his welcoming attitude extended only to faiths with which he was personally comfortable. *See* Jim Davenport, *SC lawmakers have religion on minds, in bills*, A S S O C I A T E D   P R E S S , M a y   1 3 ,   2 0 0 8 ,   *a v a i l a b l e   a t http://www.firstamendmentcenter.org/%5Cnews.aspx?id=20063*. When asked whether he would support an "I Believe" tag for Wiccans, which the U.S. Supreme Court (as well as the Fourth Circuit, the U.S. Army, and the Federal Bureau of Prisons) has recognized as a religion protected by the First Amendment, McGill clarified: "Well, that's not what I consider to be a religion." *Id*. Buddhists will also have to wait on McGill to render a judgement as to whether their faith is deserving of an "I Believe" license plate. Asked about a Buddhist plate, McGill explained: "I'd have to look at the individual situation." *Id.* State Sen. Kevin Bryant, another co-sponsor of the "I Believe" legislation, has similar qualms about permitting certain religions to have their own "I Believe" plate. As he noted last month on his blog: "I guess I'd have to admit I could support a plate for the Jewish community, yet would be very uncomfortable with a plate for scientology. This is inconsistent, I'll admit." Sen. Kevin Bryant, http://kevinbryant.com/2008/06/20/i-believe-were- going-to-court/ (last visited July 28, 2008).

44.    With legislators clearly opposed to enacting legislation to create "I Believe" plates for minority faiths, believers of minority faiths have no means of obtaining their own "I Believe" plates. There is no opportunity for a non-Christian individual or organization to obtain such a plate through the DMV because DMV-approved plates cannot contain "slogans, names or other text." For the same reason, a plate with the words "I Do Not Believe," or any other words specific to an organization's beliefs, would be unavailable under current DMV rules.

20

## Claims for Relief

**A.    Establishment Clause Violation**

45.    Paragraphs 1 through 44 are incorporated as if fully set forth here.

46.    The Establishment Clause of the First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion."  The Establishment Clause applies with full force and effect to the acts of state officials under the Fourteenth Amendment's Due Process Clause.

47.    Section 56-3-10110 of the South Carolina Code, which authorizes the creation of the "I Believe" license plate, together with the license plate itself, constitutes governmental speech because the plate was designed, proposed, and approved by, and will be produced and distributed by, state officials.

48.    The passage of the legislation creating the "I Believe" license plate, the advertising and marketing of the plate, and the imminent production of the plate have the purpose and effect of promoting, advancing, favoring, and endorsing the Christian religion, in violation of the Establishment Clause.

49.    In addition, and/or in the alternative, to the extent the specialty plate is private speech, the South Carolina legislature has chosen to promote, advance, favor, and endorse a private, Christian message — to the exclusion of the members of other religious denominations and of individuals of no religious faith.

**B.    Free Speech Clause Violation**

50.    Paragraphs 1 through 49 are incorporated as if fully set forth here.

51.    The Free Speech Clause of the First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."  The Free Speech Clause applies with full force and effect to the acts of state officials under the Fourteenth Amendment's Due Process Clause.

52.    To the extent that the "I Believe" license plate created by section 56-3-10110 of the South Carolina Code is deemed to involve private or a hybrid of private and governmental speech, the legislature's passage of the statute calling for issuance of the plate, and the DMV's imminent production of it, violate the Free Speech Clause by privileging the expression of Christian religious beliefs and, therefore, discriminating on the basis of viewpoint.  Section 56-3-10110 privileges the expression of the Christian religious viewpoint by allowing the expression of that perspective on a legislatively approved specialty license plate, without providing a materially equivalent opportunity for the expression of non-Christian religious viewpoints or non-religious viewpoints.  *See Planned Parenthood of S.C. Inc. v. Rose*, 361 F.3d 786, 799 (4th Cir. 2004).

**Prayer for Relief**

53.    Paragraphs 1 through 52 above are incorporated as if fully set forth here.

54.    By violating the Establishment Clause as set forth above, Defendants have, under color of state statutes, ordinances, regulations, policies, custom, or usage, deprived Plaintiffs of rights secured by the First and Fourteenth Amendments to the U.S. Constitution, entitling them to a remedy under 42 U.S.C. § 1983.

55.    In addition, and/or in the alternative, by violating the Free Speech Clause as set forth above, Defendants have, under color of state statutes, ordinances, regulations, policies, custom, or

usage, deprived Plaintiffs of rights secured by the First and Fourteenth Amendments to the U.S. Constitution, entitling them to a remedy under 42 U.S.C. § 1983.

**A.    Declaratory Judgment**

56.    An actual controversy exists between the parties as to whether the statute creating the "I Believe" plate violates the Establishment Clause. Plaintiffs respectfully request a declaratory judgment that the statute violates the U.S. Constitution.

57.    In addition, and/or in the alternative, an actual controversy exists between the parties as to whether the statute creating the "I Believe" plate violates the Free Speech Clause. Plaintiffs respectfully request a declaratory judgment that the statute violates the U.S. Constitution.

**B.    Injunction**

58.    Plaintiffs also respectfully request a preliminary and permanent injunction enjoining Defendants from implementing the statute creating the "I Believe" license plate.

**C.    Attorneys' Fees and Costs**

59.    Plaintiffs further request an order awarding them the costs of this action, including attorneys' fees, costs, and expenses, under 42 U.S.C. § 1988.

**D.    Other Relief**

60.    Plaintiffs further request any other relief that the Court deems just and proper.

Respectfully submitted,


/s/ Aaron J. Kozloski_____

Ayesha N. Khan (appearing *pro hac vice)*
Alex J. Luchenitser (*pro hac vice* motion to follow)
AMERICANS UNITED FOR SEPARATION
   OF CHURCH AND STATE
518 C Street, NE
Washington, DC  20002
Tel:   (202) 466-3234
Fax:   (202) 466-2587
*khan@au.org* /*luchenitser@au.org*

Aaron J. Kozloski (D. S.C. Bar No. 9510)
CAPITOL COUNSEL
1201 Main Street Suite 1980
Box 11902 Capitol Station
Columbia, SC 29211
Tel:  (803) 748-1320
Fax:  (888) 513-6021
*aaron@capitolcounsel.us*

*Attorneys for Plaintiffs*


Dated:  Aug. 1, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I caused this First Amended Complaint to be served via first-class

mail and e-mail, on August 1, 2008, on the following counsel for the defendants (who have not

yet made a formal appearance in this case but have disclosed their identities to the plaintiffs):

J. Emory Smith, Jr. (*AGESMITH@ag.state.sc.us*)
Assistant Deputy Attorney General
Office of the Attorney General
P.O. Box 11549
Columbia, SC 29211

Karl Smith Bowers (*butch.bowers@nelsonmullins.com*)
Kevin A. Hall (*kevin.hall@nelsonmullins.com*)
Nelson Mullins
Meridian, 17th Floor
1320 Main Street
Columbia, SC 29201

/s/ Alex J. Luchenitser
Alex J. Luchenitser